******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

EVELEIGH, J., dissenting. I agree with the majority that the trial court in the present case improperly determined that "the plain and unambiguous meaning of the word 'paid' . . . in [General Statutes] § 31-291 is 'simply to transfer money.' " I further agree with the majority that "the term 'paid compensation benefits' in § 31-291 requires a principal employer to demonstrate that it bore the cost of *all* of the workers' compensation benefits to an injured employee in order to obtain statutory immunity from civil actions." (Emphasis in original.) I disagree with the majority, however, that "although § 31-291 requires a principal employer to bear the costs of all of the injured employees' benefits to be entitled to immunity, there nevertheless is no genuine issue of material fact as to whether the [named] defendant [O & G Industries, Inc.][1] bore all of those costs in this case." (Footnote added.) To the contrary, I would conclude that the defendant did not meet its burden of demonstrating that there is no genuine issue of material fact that it "bore the cost" of *all* of the workers' compensation benefits and that, therefore, the trial court improperly granted summary judgment in favor of the defendant on the claims brought by the plaintiffs James L. Thompson II, Carol M. Thompson, and James McVay.[2] In the alternative, I would conclude that the matter should be remanded to the trial court for the parties to have the opportunity to relitigate and the trial court to determine, in light of the majority's clarification of the term "paid" in § 31-291, whether there is a genuine issue of material fact as to whether the defendant has statutory immunity. Therefore, I respectfully dissent.

I agree with the facts and procedural history as set forth in the majority opinion. I will provide additional facts as necessary. I begin my analysis with the standard of review applicable to a trial court's decision to grant a motion for summary judgment. "Practice Book § 17-49 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. A party moving for summary judgment is held to a strict standard. . . . To satisfy his burden the movant must make a showing that it is quite clear what the truth is, and that excludes any real doubt as to the existence of any genuine issue of material fact. . . . As the burden of proof is on the movant, the evidence must be viewed in the light most favorable to the opponent. . . . When documents submitted in support of a motion for summary judgment fail to establish that there is no genuine issue of material fact, the nonmoving party has no obligation to submit documents establishing the existence of such an issue. . . . Once the moving party has met its burden, how-

ever, the opposing party must present evidence that demonstrates the existence of some disputed factual issue. . . . It is not enough, however, for the opposing party merely to assert the existence of such a disputed issue. Mere assertions of fact . . . are insufficient to establish the existence of a material fact and, therefore, cannot refute evidence properly presented to the court under Practice Book § [17-45]. . . . Our review of the trial court's decision to grant [a] motion for summary judgment is plenary." (Citation omitted; internal quotation marks omitted.) *Ferri* v. *Powell-Ferri*, 317 Conn. 223, 228, 116 A.3d 297 (2015).

I disagree with the majority that "[a]pplying this construction of § 31-291 to the present case" there "is no genuine issue of material fact as to whether the defendant paid for all of the benefits provided to Thompson and McVay" through the contractor controlled insurance program (CCIP). To the contrary, under the construction of § 31-291 adopted by the majority, I would conclude that the defendant did not meet its burden of proving that there is no genuine issue of material fact that it "bore the cost of *all* of the workers' compensation benefits . . . ." (Emphasis in original.) Instead, I would conclude that, although the defendant may have demonstrated that it transferred the funds for the workers' compensation benefits to the insurers, viewing the evidence in the light most favorable to the nonmoving party, there is a genuine issue of material fact as to whether the defendant bore the entire cost of the workers' compensation benefits. Specifically, a review of the evidence that the plaintiffs submitted in connection with their opposition to the motion for summary judgment demonstrates a genuine issue of material fact regarding whether, under the definition adopted by the majority in this opinion, the defendant bore the entire cost of the workers' compensation benefits.

Pursuant to the subcontracts in the present case, each of the defendant's subcontractors was required to participate in the CCIP. Through the CCIP, each subcontractor was issued its own workers' compensation policy with its own policy number. The defendant was not an insured on these policies. These policies contained an "Assignment Consent Endorsement," providing that the term "[s]ponsor as used in this policy means [the defendant]" and providing that "[t]his policy is issued at the direction of [s]ponsor . . . who shall be solely responsible for payment of [the] premium." The endorsement further provided that "[t]he [i]nsured has assigned to [the] [s]ponsor" the following rights: (1) "[t]he [i]nsured's right, title and interest to any and all returns of premiums, dividends, discounts or other adjustments"; and (2) "[t]he [i]nsured's rights of cancellation as [i]nsured." The defendant was not an insured on the policies issued to its subcontractors. Although the policies contained an "Alternate Employer Endorsement," which provided that the defendant would be

considered an insured if the employee became a temporary or special employee of the defendant, it is undisputed that the plaintiffs never became temporary or special employees of the defendant. Accordingly, the defendant was never an insured under the policies at issue in the present case. Therefore, although the insurance policies themselves demonstrate that the defendant was "solely responsible for payment of [the] premium," the fact that the defendant was never named as an insured on the policy raises a question of fact as to what entity actually bore the cost of the workers' compensation benefits provided to Thompson and McVay.

The CCIP Insurance Manual (manual) also raises a question as to which entity bore the cost of the benefits. First, the manual explains that "[the defendant] provides [w]orkers' [c]ompensation, [g]eneral [l]iability and [e]xcess [l]iability insurance for all [e]nrolled [p]arties under the CCIP for [w]ork performed at the [p]roject [s]ite." The manual, however, then details a complicated procedure, which it describes as "the procedures for bidding and how CCIP insurance amounts are paid for." The manual further provides that it "contains several worksheets that can help [subcontractors] determine [their] insurance costs for [the] project." The manual explained as follows: "Rates are due at the time of [the defendant's] delivery of this manual. Once collected, these will be used for the life of the subcontractor's performance of work on site. [A deductive change order] will be taken against the contract in the amount of the [t]otal [v]erified [i]nsurance [c]osts based upon the subcontractor's estimated labor and actual insurance costs. As additional [subcontract] tiers are identified and verified, or initial insurance costs are adjusted, an additional deductive change [order] may be applied. *In the event that the actual insurance costs for all tiers exceed the estimated costs, [the defendant] may take an additional deductive adjustment to the subcontract.*" (Emphasis added.) As the foregoing demonstrates, the procedures for obtaining workers' compensation insurance ensured that the defendant would be able to recoup any additional costs that it incurred to provide workers' compensation insurance to its subcontractors. This language in the manual seems to indicate an arrangement by which the defendant is able to recover all costs for insurance from the subcontractor and, therefore, raises a genuine issue of material fact as to whether the defendant bore the cost for the workers' compensation insurance, or was able to recover all costs from its subcontractors.

The manual also explains that each "[s]ubcontractor shall include this CCIP [i]nsurance [a]mount in its [a]pplication(s) for [p]ayment when and as directed by [the defendant]. [The defendant] will, when due, *on behalf of the subcontractor*, make such payment by delivering the CCIP [i]nsurance [a]mount (or the por-

tion of the CCIP [i]nsurance [a]mount that was included in the [a]pplication for [p]ayment) to the relevant [w]orkers' [c]ompensation and [g]eneral [l]iability insurance companies. [The defendant] will deliver the balance of the [a]pplication for [p]ayment due for [w]ork completed to the subcontractor." (Emphasis added.) This language from the manual seems to imply a relationship whereby the defendant acts as the conduit for the money of the subcontractor, but does not bear any cost for workers' compensation insurance itself.

At his deposition, Daniel Cretella, the defendant's financial analyst, testified as follows regarding this portion of the manual in response to questions from the plaintiffs' counsel:

"Q. Okay. And if you look at [the] Monthly Payments [section of the manual], it says [that the] subcontractor shall include the CCIP amount in its application for payment when and as directed by [the defendant]. [The defendant] will, when due, on behalf of the subcontractor make such payment by delivering the CCIP insurance amount to the relevant workers' compensation and general liability insurance company. That was the practice, correct?

"A. That's not accurate. . . .

"Q. That's not accurate? Okay. Now, this identifies the process where a payment would be made by [the defendant] on behalf of the contractor and then a deductive change order would be applied to the bid to account for the workers' compensation costs, correct? . . .

"A. That is not correct. . . .

"Q. Okay. That's what it says [in the manual] though, right? . . .

"A. What you just read is what it says.

"Q. Well, the concept is as I described, no? . . .

"A. No, that's not true.

"Q. Okay. So [this section of the manual is] inaccurate?

"A. I would say that that section is inaccurate." (Internal quotation marks omitted.)[3]

The fact that Cretella testified that the defendant's practice was not consistent with the process described in the manual is significant. The manual describes the defendant as making payments on behalf of the subcontractors and details how the defendant's subcontractors can determine their insurance costs for the project. Though other aspects of the manual had been altered during the formation process, Cretella admitted that the defendant never asked for this "inaccurate" section to be changed. In my view, this conflict between the language of the manual and Cretella's deposition testi-

mony, in and of itself, creates a material question of fact as to which parties, the defendant or its subcontractors, bore the cost of the workers' compensation insurance in the present case.

As this court has explained, when "there is room for a reasonable difference of opinion among fair-minded jurors," summary judgment is inappropriate. (Internal quotation marks omitted.) *Labbe* v. *Pension Commission*, 239 Conn. 168, 192, 682 A.2d 490 (1996). The fact that Cretella testified that these portions of the manual were inaccurate establishes a genuine issue of material fact. See *Hurley* v. *Heart Physicians, P.C.*, 278 Conn. 305, 321, 898 A.2d 777 (2006) ("[w]e agree with the plaintiffs that they provided a sufficient evidentiary foundation to demonstrate the existence of a genuine issue of material fact—as to whether [the defendant's representative] behaved in a manner in derogation of the [a] technical manual—sufficient to have precluded the trial court from [granting summary judgment]"). In the present case, the plaintiffs, through the deposition testimony of Cretella, have presented a sufficient evidentiary basis to demonstrate the existence of a genuine issue of material fact as to whether the defendant acted as a conduit for premium payments on behalf of the subcontractors and, therefore, did not bear the entire cost of the workers' compensation benefits.

An examination of the contractual documents for the subcontractor that employed Thompson, United Anco Services, Inc. (United Anco), also raises a genuine issue of material fact. Pursuant to the procedures detailed in the manual, when United Anco submitted its bid to the defendant, it submitted a standard form to the defendant's insurance broker. On this form, United Anco estimated its total insurance premium to be $63,525.16. Pursuant to the manual, United Anco added a profit charge to the total insurance premium, making the total insurance cost $69,877.68. Throughout the course of the project, the defendant deducted a total insurance premium cost of $1,156,604.04 from United Anco's subcontract. Of this amount, 10 percent was a profit that United Anco had added on to its insurance cost. The deductions for insurance premium costs had no relation to the actual cost born by the defendant from implementing the CCIP. In fact, the CCIP was intended to be a profit center for the defendant.[4]

Indeed, the following colloquy between the plaintiffs' counsel and Cretella explains the process:

"Q. Okay. So there's a bid package which includes insurance. You then take out the CCIP cost from the bid package and a profit amount that would be attributable to the insurance and that is the net amount that the contractor is paid. Is that a fair statement?

"A. No.

"Q. Okay. And why is that incorrect?

"A. Because it's got nothing to do with the cost of the CCIP, it's got to do with the particular subcontractor's cost to purchase insurance had they been purchasing insurance. It's their rates based on their declaration pages at their lost history. It's what they would have paid, what they included in their contract in that bid amount that you put that if they were the ones that were going to purchase that insurance. . . .

"Q. Well . . . there's an amount—at least initially the process would be that you submit the form to [the defendant's insurance broker] and then they come back with a letter verifying the amount for the particular contractor . . . right?

"A. That's correct.

"Q. Okay. And then . . . that amount . . . is subtracted off of the gross bid amount to show what I would call a net bid amount minus insurance, correct?

"A. That's correct.

"Q. Okay. And then the contract is run through, the particular contractor finishes his work and then there's a final calculation that's made by [the defendant's insurance broker] as to what the actual insurance amount or premium amount attributable to that subcontractor would be, correct? . . .

"A. The subcontractor would have paid, if they were still contractually obliged to buy insurance whether it be—they would have had to pay, based on the payroll expended, is how insurance is calculated."

The facts that were before the trial court raised the issue of whether, through this deductive change order system, the defendant merely relieved the subcontractors from having to *procure* the workers' compensation insurance coverage but not from having to *pay* for it, as statutorily required.[5] The fact that, following the implementation of the CCIP, the defendant decided to implement the aforementioned deductive change order system rather than reinstitute the subcontractor contracts and simply bill the subcontractors for their work raises questions of fact as to who actually shouldered the financial burden of the workers' compensation benefits. If the legislature intended for the principal employer to merely be responsible for *procuring* the insurance, it would have said so. I do not believe that the statutory language or the legislative history support an understanding of § 31-291 that would grant immunity to general contractors, where the subcontractors reimburse the general contractor for the premium costs or the general contractor is making a profit off of the subcontractors by implementing a CCIP whereby it deducts the subcontractors' projected insurance costs, which include a profit margin. The deposition testimony of Cretella supports the proposition that the defendant saved approximately $868,000 by taking the insurance

credits from the subcontractors and administering the insurance program itself.[6] Certainly, under the construction of § 31-291 adopted by the majority, there is a genuine issue of material fact as to whether the defendant funded the workers' compensation benefits, either partially or in full, largely from the insurance credits.

In accordance with the new definition of "paid" adopted by the majority, I would conclude that the employer must provide the workers' compensation benefits to the subcontractors for free. Indeed, as the majority concludes, the employer must bear the entire cost of the workers' compensation benefits. In my view, another genuine issue of material fact exists because the evidence demonstrates that the defendant does not represent that it provided these benefits to the employer for free. Indeed, Cretella admitted at his deposition that the defendant did not provide the CCIP to the subcontractors for free.[7] At oral argument before this court, in response to a question of whether the defendant provided the insurance for free, the defendant's attorney initially responded by stating that "the word free is a very tricky thing."[8] I would conclude that, unless the workers' compensation benefits were provided to the subcontractor for free, a genuine issue of material fact exists regarding what entity or entities bore the cost of the workers' compensation benefits in the present case.

Furthermore, the trial court recognized the import of the evidence submitted by the plaintiffs, finding as follows: "The plaintiffs also argue that in reality the subcontractors actually 'paid' the insurance policy under the CCIP . . . with [the defendant] acting as an intermediary. The plaintiffs explain that when the subcontractors originally submitted their bids, they included as a line item the cost of purchasing workers' compensation insurance for the project. Later, when the subcontractors enrolled in the CCIP, [the defendant] deducted from the subcontractor's contract price the line item cost used in the bid for estimating the cost of procuring insurance. The plaintiffs cite this 'deduct change order for insurance premium' process as proof that the intent of the CCIP was to have the subcontractors, not [the defendant], pay for the workers' compensation insurance. In essence, the plaintiffs argue that [the defendant] wrote checks and authorized wire transfers merely as a conduit for subcontractor money. The plaintiffs also offer evidence that the CCIP . . . allowed [the defendant] to charge a general contractor's mark-up on the CCIP premiums, thereby allegedly profiting on the transactions. Finally, plaintiffs point to language in [the manual] stating that 'premium payments are made on behalf of the subcontractor.' On the basis of these proofs, the plaintiffs suggest that the defendant . . . has failed to establish as undisputed fact that it 'paid' workers' compensation benefits within the meaning of § 31-291.

"The court disagrees. In order for these facts to be material to the application of § 31-291, the court would need to interpret and apply 'paid' in a fashion well apart from its plain and ordinary meaning. Under the ordinary meaning of 'paid,' the person who tenders or transfers money to another in exchange for property or a service, or in satisfaction of an obligation, is deemed to the person that has 'paid' the debt or 'paid' for that which is received in exchange. The common usage of the word 'paid' does not contemplate an accounting of debits and credits and an economic analysis as to which party has in fact incurred a permanent change in [its] financial position as a result of a transaction."

The majority rejects, however, the narrow interpretation of the term "paid" and concludes that it does require "a principal employer to demonstrate that it bore the cost of all of the workers' compensation benefits to an injured employee in order to obtain statutory immunity . . . ." (Emphasis omitted.) As a result, the evidence that the plaintiffs presented to refute the motion for summary judgment does demonstrate that there is a genuine issue of material fact under the majority's definition of "paid" for purposes of § 31-291. Accordingly, I would conclude that the judgment of the trial court should be reversed and the matter should be remanded to that court with direction to deny the defendant's motion for summary judgment.

I would conclude that, because the trial court applied a narrow definition of the term "paid" as applied to § 31-291, it never reached the question of whether the defendant actually bore the financial burden of providing workers' compensation benefits to Thompson and McVay. Thus, in the alternative, I would conclude that at the very least this court should remand the matter to the trial court for reconsideration of the defendant's motion for summary judgment in light of this court's decision. See *McDermott* v. *State*, 316 Conn. 601, 611, 113 A.3d 419 (2015) (concluding that because trial court applied wrong legal standard to facts, it was "necessary to remand the case to the trial court for a new trial to allow the parties to present their cases with the correct legal standard in mind and to allow the trial court to evaluate the facts in light of this correct legal standard").

Accordingly, I respectfully dissent.

[1] I note that, although there are other defendants in the present case, they are not involved in this appeal. See footnote 3 of the majority opinion. For the sake of simplicity, I refer to O & G Industries, Inc., as the defendant.

[2] For the sake of consistency with the majority opinion, I refer to James L. Thompson II, Carol M. Thompson, and James McVay collectively as the plaintiffs and to James L. Thompson II by his surname. See footnote 2 of the majority opinion.

[3] This additional colloquy occurred between Cretella and the plaintiffs' counsel regarding the manual:

"Q. Okay. In the subcontractor bid section, do you see that? . . .

"A. Yes.

"Q. Okay. The second sentence says, 'the section . . . identify[s] subcontractor insurance costs describe[s] the procedure for bidding and how [the]

CCIP insurance amounts are paid for.' Do you see that?

"A. I see it.

"Q. By whom? Paid for by the subcontractor, the contractor, or [the defendant]? . . . Or somebody else? What is your interpretation of that sentence? So let me ask you . . . would [that] sentence say, the section . . . identifying subcontractor insurance costs describe[s] the procedures for bidding and how [the] CCIP insurance amounts are paid for by the contractor or [the defendant]? . . .

"A. The way I would interpret that, because it starts off saying, 'the section . . . identifying subcontractor insurances costs' . . . is the procedure by which we are identifying the scope or that piece of the contract that would be the subcontractor's responsibility to purchase insurance. So the cost that they would be paying for insurance if it was left in their contract.

"Q. Okay. Paid for by the contractor?

"A. The subcontractor, I think is a more accurate, you know, statement there. If the subcontractor was purchasing insurance. Again, that cost that's part of their contract.

"Q. Okay. So just so I'm clear on this, it's paid for by the subcontractor, meaning a contractor on the job other than [the defendant]? . . . Is that fair to say?

"A. I'm saying, again, my interpretation only is that this section . . . 'identifying subcontractor insurances costs' . . . [i]s referring to specifically the cost that was included in the bid in . . . each individual subcontractor's contract for carrying insurance.

"Q. Right. So my question again is [whether] that sentence mean[s] paid for by the subcontractor meaning an entity other than [the defendant]? . . .

"A. Prior to us relieving them of their obligation, yes. . . .

"Q. Let me ask it this way, that sentence is directed to the subcontractor, correct? . . .

"A. This is the subcontractor bid section.

"Q. Okay. So it's directed to the subcontractor, right?

"A. Okay.

"Q. Is that a yes?

"A. Yes.

"Q. Okay. And then it says . . . '[this manual] contains several worksheets that can help you determine your subcontractor insurance costs for the project.' Do you see that?

"A. I see it.

"Q. And is the insurance cost for the project [that would be labeled on forms] as the total initial insurance cost? Is that what they are referring to? . . .

"A. Yeah. . . . This is to help identify the insurance costs that the subcontractor had in their subcontract, that they carried in . . . had they had to provide the insurance."

[4] The following colloquy occurred during questioning by the plaintiffs' counsel at Cretella's deposition regarding the underlying purpose of the CCIP:

"Q. Well, the concept was going into it that you would save that money, correct?

"A. That's the concept.

"Q. Okay. Is that the only place that you would have sort of a profit center on a CCIP, would be you would be able to save paying the contractor the profit margin that they would add on top of the insurance? . . .

"A. No. . . .

"Q. Okay. Where are other profit centers?

"A. Well, it is economies of scale. . . . So if you have 100 folks going to 100 different brokers and 100 different insurance companies, you are going to have commissions and things that are paid along the way. Whereas if you aggregate and then purchase that centrally, [there is] a savings. It's economies of scale."

[5] At oral argument on the defendant's motion for summary judgment, the trial court stated as follows: "I'd parse this into two things. There's the obligation to procure and provide the insurance . . . and the obligation to pay for it. What I see is [the defendant] relieving [its subcontractors] of the obligation to procure and provide the insurance, but not relieving them of the obligation to pay for it."

[6] At Cretella's deposition, the following exchange occurred during questioning by the plaintiffs' counsel:

"Q. . . . I want to know a little bit about . . . the overhead and profit on the insurance premium. Okay? So hypothetically, if you don't have a CCIP it's assumed that there's a profit assigned to the amount that the contractor pays for insurance? . . .

"A. Yes. . . .

"Q. Normally, the contractor would recover that profit amount from the general contractor as part of the bid price—

"A. Yes.

"Q. —or include it in the bid price?

"A. Right. So . . . for instance, this $3 million United Anco bid here is based on whatever estimate of hours they had for payroll.

"Q. Right. Understood.

"A. And then any cost that they would have included in their bid, overhead, profit, insurance, all that other stuff . . . that's associated with that bid amount. As I understand it, when they are doing bids you kind of work down to the bottom line and you add a profit and overhead amount that goes on everything that is above the line which would be payroll, insurance, all that stuff. . . . So yes, the insurance does have profit and overhead associated with it.

"Q. Some of them are 10 percent, some of them are 15 percent, how is that determined?

"A. The 15 percent was the standard rate that was put on the forms. You had some subcontractors, I believe, that came back and said [they] don't carry 15 percent on this, [they] carry something less. And that was the negotiation that took place. . . .

"Q. Okay. So someone claimed that they took a 15 percent profit on top of the insurance and some of them would claim they took a 10 percent profit on top of the insurance and, ultimately, [the defendant] would decide with each contractor whether they were going to get a 10 percent or 15 percent allocation?

"A. That's correct."

The colloquy between Cretella and the plaintiffs' counsel continues:

"Q. Okay. Is there any material in front of you where you would be able to determine what that 10 or 15 percent profit line would be aggregated for the whole CCIP? . . .

"A. No.

"Q. Okay. Because you gave me sort of a spreadsheet that showed a delta like $300,000. Did you prepare that?

"A. I did.

"Q. Okay. And what does that number mean?

"A. . . . [W]ithin that would be . . . the total of the insurance cost that would have been for the [subcontractor] plus their overhead and profit if any aggregated. . . .

"Q. Okay. So is there a way that we could back from that number into what the overhead and profit would be? . . . Is there a way you could estimate that?

"A. Sure.

***

"Q. Can you do that calculation . . . sort of on an estimated basis?

"A. Again, this is a total assumption. *So if we go with 12 percent as an average and you divided that by 1.12, you'll get a number that gives you the base, if you will, or the insurance cost of* [*approximately $7,300,000*]. *And I've got a delta, which would be the overhead and profit line. Again, all assumptions of $868,000, we'll call it.*

"Q. *Okay. So you are giving me sort of a ballpark which would be assuming that some of the contractors had a 10 percent, some had 15 percent, maybe some had 13 percent, we are just using that as an example?*

"A. *That's correct.*" (Emphasis added.)

[7] The following colloquy occurred at Cretella's deposition during questioning by the plaintiffs' counsel:

"Q. . . . So is it your position you gave them this insurance for free? . . .

"A. It's an interesting way to put it. It's a more effective way . . . to purchase insurance, if you will. . . .

"Q. Just answer my question. Did you give them all this insurance for free? . . . Is that your contention?

"A. Did we give it to them for free? We didn't give them anything, so no. We were providing the insurance. . . .

"Q. . . . It's your contention that there was no consideration paid at all by United Anco or [the defendant's other subcontractors] for workers' compensation insurance within the CCIP?

"A. That is correct."

[8] Specifically, when asked during oral argument whether the defendant "provided the insurance for free" counsel for the defendant gave the following response: "The word free is a very tricky thing. They incurred a lot of— they paid a lot of money and there's a trade-off when you bring a subcontrac-

tor on there's certain incentives in either direction. If you use the word free in the context of the subcontractor did not have to pay a dime for it, then yes, that's the word to use if that's the word you're comfortable with, I will be as well . . . ."

———————————————————